UNITED STATES of America,
Plaintiff–Appellee,

v.

Steven P. SPARKS (95–6229); Paul Cecil Sparks (95–6230), Defendants–Appellants.

Nos. 95–6229, 95–6230.

United States Court of Appeals,
Sixth Circuit.

Submitted June 11, 1996.

Decided July 9, 1996.

Jimmie Baxter, Asst. U.S. Atty. (briefed), Office of the U.S. Attorney, Knoxville, TN, for U.S.

Renfro B. Baird, III (briefed), Baird & Stewart, Rogersville, TN, for Paul C. Sparks.

Heiskell H. Winstead (briefed), Rogersville, TN, for Steven P. Sparks.

SUHRHEINRICH, Circuit Judge.

Steven P. Sparks and Paul Cecil Sparks appeal the sentences that they received after being convicted of falsifying bank records and misapplying bank funds, in violation of 18 U.S.C. §§ 656 and 1005. The parties have waived oral argument, and the panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

On August 28, 1995, Steven P. Sparks was sentenced to 24 months of imprisonment and three years of supervised release. His father, Paul Cecil Sparks, was sentenced to 15 months of imprisonment and three years of supervised release on that same day.

Steven Sparks had been employed as a commercial loan officer at a bank. He made a series of fraudulent loans in the names of various third-parties, for the purpose of benefitting himself, his father and another indi-

vidual named Steve Gupton. Some of these loans were used to bolster the defendants' troubled liquor store business. This business was managed by Paul Sparks, who also aided and abetted his son by recruiting the nominal recipients of the loans.

 The defendants have not challenged their convictions in this appeal. Instead, they argue that their sentences were erroneously calculated based on the amount of loss that the bank had sustained at the time that the fraud was discovered, rather than at sentencing. We review the district court's legal conclusions regarding the sentencing guidelines *de novo*, while its factual findings are reviewed for clear error. *United States v. Scott*, 74 F.3d 107, 111 (6th Cir.1996). In finding that Steven Sparks was responsible for a loss of $55,734 and that Paul Sparks was responsible for a loss of $39,359, the court properly deducted payments that had been made on the loans before the fraud was detected. *See United States v. Buckner*, 9 F.3d 452, 454 (6th Cir.1993). Nevertheless, Steven Sparks now argues that his offense level was improperly enhanced because the bank's loss was subsequently reduced, when Gupton paid the balances that were due on a $24,000 loan and a $15,000 loan. Paul Sparks maintains that his offense level was improperly enhanced because Gupton paid the balance due on the $24,000 loan.

The District Court's factual findings regarding the amount of loss were consistent with Guidelines § 2F1.1 and Commentary ¶ 7(b) (1994) and our decision in *United States v. Wright*, 60 F.3d 240, 241–42 (6th Cir.1995), as well as other decisions of this Court. Under the Commentary, our Court has concluded that the amount of loss in a bank fraud case should ordinarily be determined as of "the time the crime was detected rather than at sentencing." *Scott*, 74 F.3d at 112. The word "loss" means and includes "money which others may pay but are not obligated to pay on behalf of the defendant," although a loss ordinarily "should not include amounts that a bank can and does recover by foreclosure, setoff, attachment, simple demand for payment, immediate recovery from the actual debtor and other similar legal remedies...." *Wright*, 60 F.3d at 242. In

the present case the debt was not repaid immediately by simple demand or through foreclosure, but by a third party more than a year after the discovery of the fraud. That Gupton's payments reduced the amount of the bank's ultimate loss does not alter the amount of "actual loss" determinable at the time the crime was detected, because, at that time, the bank had no realistic expectation of "immediate recovery [either] from the actual debtor," or through "legal remedies."

Moreover, the fraud here was not based primarily on a misrepresentation by the defendant as to the "value of his assets," as provided in the example found in Commentary ¶ 7(b) of Guideline § 2F1.1. Thus, the language of this example in Commentary ¶ 7(b) is not applicable to the present case. Consequently, the amount of loss attributable to the defendant was not reduced by Gupton's voluntary payments long after the discovery of the fraud and Judge Hull was correct that these amounts should be included in the "amount of the loss" as under Guideline § 2F1.1. *See United States v. Wolfe*, 71 F.3d 611, 617–19 (6th Cir.1995).

The amount of loss may be reduced by the amount that the bank has recovered or may expect to recover from any assets pledged to secure a loan. However, it is undisputed that the contested loans were not effectively secured. We also note that the $15,000 loan was not considered in calculating Paul Sparks's sentence. Moreover, reducing the loss in Steven Sparks's case by this amount would not have affected the calculation of his offense level. Thus, the district court correctly applied the guidelines in this case. *See Scott*, 74 F.3d at 111–12; *Wolfe*, 71 F.3d at 617–19.

 The defendants also argue that the court should have departed downward from the applicable sentencing guidelines range. A downward departure may be warranted if the amount of loss calculated significantly overstates the seriousness of an offense. USSG § 2F1.1, comment. 7(b) (1994). However, the district court was aware of its discretion to depart from the guideline range, and its decision not to exercise that discretion is not cognizable on appeal. *See United States v. Byrd*, 53 F.3d 144, 145 (6th Cir.

1995); *United States v. Brannon,* 7 F.3d 516, 521–22 (6th Cir.1993).

Accordingly, the district court's judgments are affirmed.